**Dominick FERRANTE, Plaintiff,**

v.

**METRO–NORTH COMMUTER RAILROAD, Defendant.**

88 Civ. 8863 (CHT).

United States District Court, S.D. New York.

May 15, 1990.

Elkind, Flynn & Maurer, P.C., New York City (Michael Flynn, of counsel), for plaintiff.

Semel, Schepp & Yuhas, New York City (Peter M. Adams, Joseph P. Carfora, of counsel), for defendant.

## MEMORANDUM AND ORDER

TENNEY, District Judge.

This case involves a claim brought by plaintiff under the Federal Employers' Liability Act ("FELA"). Plaintiff was injured in a fall after being ordered into a smoky tunnel to investigate damage to signal equipment from a track fire. Defendant denied liability and raised the affirmative defense of contributory negligence. On May 8, 1990, after a one-week trial, a jury rendered a verdict in favor of plaintiff. Questions subsequently arose about a possible mistake in interpretation about what the jury intended to award. Therefore, the court stayed entry of judgment pending further proceedings.

## BACKGROUND

With the exception of the issues surrounding the verdict, this case was unremarkable. The jury had been supplied with a special verdict form that is commonly used in FELA cases. The first question asked the jury to indicate whether defendant had been negligent. The second asked it to decide whether that negligence played any part in causing plaintiff's injury. The third asked it to determine whether any negligence by plaintiff contributed to his injury. The jury answered each of these questions in the affirmative.

The fourth question required the jury to specify the relative percentages of negligence of the plaintiff and defendant. In the fifth question, the jury was asked to determine the damages sustained by the plaintiff. These two questions appeared on the verdict form as follows:

4) What were the relative percentages of fault of the plaintiff and defendant? (Your total must equal 100%.)

Plaintiff _____%
+ Defendant _____%
Total      100%

Go on to Question 5.

5) How much, if any, is plaintiff entitled to recover for:
   a) Past lost income?

   $_____

   b) Future lost income?
      (Discounted to present value)

   + $_____

   c) Past pain and suffering?

   + $_____

   d) Future pain and suffering?

   + $_____

   TOTAL DAMAGES: $_____

(In computing these figures, do not reduce the award to reflect any negligence on the part of the plaintiff. This reduction will be made by the court based upon any percentages entered in Question 4.)

Foreperson, please sign this verdict form and report to the court.

_____
Foreperson

The jury answered question four by indicating that plaintiff had been forty percent negligent, and defendant sixty percent negligent. It did not answer all the subparts in question five, however. Instead of indicating any breakdown of the categories of damages, the jury left these entries blank. It simply indicated the figure $300,000 in the space designated "TOTAL DAMAGES."

Before taking the verdict, the court inquired as to why the jurors had not provided these figures:

THE COURT: I notice that there is no breakdown of the damages. It is just a round figure.

THE FOREMAN: Yes sir.

THE COURT: You are unable to break it down; is that correct?

A JUROR: We just wanted to give a lump sum.

THE FOREMAN: A lump sum.

The clerk then proceeded to take the verdict, after which the jury was polled and discharged.

Since the court had instructed the jury not to reduce the size of its award to account for contributory negligence, the court would normally have entered judgment in the amount of $180,000, or sixty percent of $300,000. As one of the jurors was on the street leaving the courthouse,

however, counsel for plaintiff approached her and began informally discussing the case. The juror indicated that the jury had intended the plaintiff to recover $300,000. The other jurors had all departed but counsel alerted the court to the discussion and entry of judgment was stayed.

The jurors were eventually reassembled a week later and questioned by the court on this issue. In the presence of counsel, the jurors were asked individually what their understanding of the verdict was. Each indicated that they understood the plaintiff would recover $300,000.

## DISCUSSION

Rule 606(b) of the Federal Rules of Evidence provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

In *Attridge v. Cencorp Div. of Dover Tech. Int'l Inc.*, 836 F.2d 113 (2nd Cir. 1987), the appellate court had occasion to address a situation similar to that presented here. In *Attridge*, as in this case, the trial judge had instructed the jury in a personal injury case that he would reduce the amount of any verdict by the amount of plaintiff's negligence. The jury proceeded to find plaintiff eighty percent negligent, and awarded him $100,000. This would mean that he would have recovered only $20,000. After the jury was discharged,

two jurors stated to a courtroom deputy that the jury had intended the plaintiff to recover $100,000. All the jurors were brought back to the court house the next morning. As in this case, the court questioned each of the jurors individually, asking them only: "What was your understanding as to what the verdict was?" Each of the six unambiguously stated that they intended the plaintiff to recover $100,000. Over the defendant's objection, judgment was entered in favor of plaintiff for $100,000.

The Second Circuit affirmed, observing that the rule against impeaching a jury's verdict is intended "to promote free and uninhibited discourse during deliberations, to protect jurors from attempts to influence them after trial, and to preserve the finality of verdicts." *Id.* at 116. Noting that Fed.R.Evid. 606(b) permits jurors to testify about extraneous prejudicial information reaching them during deliberations, the appellate court decided that Rule 606(b) "reflects a cautious propensity to expand jurors' competence to testify, while avoiding wholesale divergence from centuries of practice. But it is silent regarding inquiries designed to confirm the accuracy of a verdict." *Id.* By affirming the procedure employed in that case, the court recognized that a limited inquiry did not frustrate the policies underlying the general rule. Rather, the court concluded:

> the interviews were intended to resolve doubts regarding the accuracy of the verdict announced, and not to question the process by which those verdicts were reached. Accordingly, we affirm the district court's use of juror interviews to ascertain whether a mistaken verdict had been announced.

*Id.* at 117.

The Second Circuit's reasoning in *Attridge* has been questioned by the courts of at least two other circuits. *See, e.g., Karl v. Burlington Northern R.R. Co.*, 880 F.2d 68, 75 n. 6 (8th Cir.1989); *Robles v. Exxon Corp.*, 862 F.2d 1201, 1206 n. 5 (5th Cir. 1989). It also appears difficult to reconcile with the observation in the advisory committee notes to Rule 606(b) that "testimony

or affidavits of jurors have been held incompetent to show ... misinterpretations of instructions [or] mistake in returning verdict." Fed.R.Evid. 606(b) advisory committee notes (citations omitted). As adopted, Rule 606(b) expresses a preference for certainty and freedom from post-verdict inquiries, even when it is manifestly clear that the jury did not understand or follow the court's charge. The Rules Committee certainly must have realized that such an approach would cause some hardships, but, as adopted, Rule 606(b) reflects the reasoned judgment of the Committee that this was a necessary result.

Nevertheless, *Attridge* controls this court's actions. Under that case, the court is permitted to take notice of a jury's unanimous post-discharge statement that it did not intend the court to follow previously-announced procedures concerning the reduction of any award. In light of the criticism of *Attridge*, the court has considered whether it should be limited to the specific facts of that case. Indeed, the *Attridge* opinion does not indicate whether the verdict form in that case had a notation of the type that followed question five in this case. Nor does it reveal the details of the post-verdict conversation between the courtroom deputy and the jurors, or who initiated it. However, the reasoning in *Attridge* suggests that such distinctions would not be controlling, and this court, therefore, has not considered them in reaching its decision.

On the other hand, there is an additional fact supporting an award of the full amount on the verdict form that was not present in *Attridge*. The jury in this case made some indication prior to its discharge that it intended the plaintiff to recover the entire sum indicated on the verdict form. Admittedly, were it not for the post-discharge questioning, the court would have difficulty determining whether the two jurors' pre-verdict indications that they intended the plaintiff to be "give[n] a lump sum" meant they contemplated an award of $300,000 or $180,000. *Attridge* confers the authority for the court to consider the further evidence now part of the record. With the benefit of these statements, it would appear that the jurors unanimously intended to award plaintiff the full amount of $300,000.

## CONCLUSION

Under the authority of *Attridge*, and based on the record developed subsequent to the jury's discharge, the clerk is directed to enter judgment in favor of plaintiff in the amount of $300,000. This order is made without prejudice to defendant's rights under the Federal Rules to move to amend or modify the judgment.