**TRANS–WORLD INTERNATIONAL, INC., an Ohio corporation; and International Merchandising Corporation, an Ohio corporation, Plaintiffs,**

v.

**SMITH–HEMION PRODUCTIONS, INC., a California Corporation; Jackson Communications, Inc., a Delaware corporation; Jackson Jubilee, Inc., a New Jersey corporation; Joseph Iny, an individual; Weiss/Watson, Inc. a/k/a WWI Corporation, a New York corporation; and Caribiner Group Corporation, a New York corporation; and Does 1 through 100, Defendants.**

**And Related Cross–Actions.**

**No. CV 94–6960–LEW.**

United States District Court, C.D. California.

Oct. 2, 1996.

John A. Lawrence, Brian M. Colligan, William J. Briggs, II, Richman, Lawrence, Mann, Greene & Chizever, Beverly Hills, CA, for Cross–Complainant, Smith–Hemion Productions, Inc.

Steve Cochran, Zia Modabber, Carolyn Hampton, Katten, Muchin, Zavis & Weitzman, Los Angeles, CA, for Cross–Defendant, Michael Jackson.

R. Brian Oxman, Oxman & Jaroscak, Santa Fe Springs, CA, for Cross–Defendants Katherine, Joseph, Jermaine, Tito, Rebbie, Randy, Jackie and Marlon Jackson.

## ORDER DENYING MOTIONS BY CROSS–COMPLAINANT AND CROSS–DEFENDANTS FOR JUDGMENT AND GRANTING NEW TRIAL ON THE COURT'S OWN MOTION

LAUGHLIN E. WATERS, Senior District Judge.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

*Background:*

On September 18, 1996, after the close of evidence, closing arguments, and approximately three days of deliberations on the cross-claims for fraud between cross-complainant Smith–Hemion Productions, Inc. ("S–H") and cross-defendants Marlon, Jermaine, Katherine, Tito, Randy, Rebbie, Jackie and Joseph Jackson ("Jackson Family" or "JF"), the jury in this action sent a note to the Court through the bailiff. This note indicated that the jury had reached a unanimous verdict on the fraud claim as to each cross-defendant.

The verdict was submitted on two forms. The first form, a special interrogatory with eight questions, was materially identical to a proposed form submitted by S–H and was utilized over the objection of JF. This form read as follows:

1. Did any member of the Jackson Family who was an officer or director of Jackson Communications, Inc. ("JCI") represent to Smith–Hemion that:
 a. JCI had substantial assets including but not limited to real estate and money contained in bank accounts; or

b. they had the authority to speak for Michael Jackson; or

c. Michael Jackson would appear at the Jackson Family Honors Show scheduled for December 1993; or

d. JCI could pay Smith–Hemion's production fees; or

e. Smith–Hemion would receive all revenues including those from ticket sales, the network license fee, and proceeds from foreign distribution of the Jackson Family Honors Show?

\_\_\_\_ Yes \_\_\_\_ No

If you answered "yes" to one, some, or all of items A through E above, please answer the next question. If you answered "no" to all of items A through E, stop here.

2. Were the representation(s) false?

\_\_\_\_ Yes \_\_\_\_ No

If you answered "yes" to Question No. 2., please answer the next question. If you answered "no," stop here.

3. Were the representation(s) known by the members of the Jackson Family who were officers or directors of JCI to be false when they were made or, were the representation(s) made recklessly and without regard to their truth or falsity or, did members of the Jackson Family who were officers or directors of JCI tell Smith–Hemion that they had knowledge that the representation(s) were true, while not having such knowledge?

\_\_\_\_ Yes \_\_\_\_ No

If you answered "yes" to Question No. 3, please answer the next question. If you answered "no," stop here.

4. Did Smith–Hemion rely on the representation(s) and was it deceived by them?

\_\_\_\_ Yes \_\_\_\_ No

If you answered "yes" to Question No. 4, please answer the next question. If you answered "no," stop here.

5. Did Smith–Hemion act with ordinary prudence in relying on the representation?

\_\_\_\_ Yes \_\_\_\_ No

If you answered "yes" to Question No. 5, please answer the next question. If you answered "no," stop here.

6. Were the false representation(s) the proximate cause of injury to Smith–Hemion?

\_\_\_\_ Yes \_\_\_\_ No

If you answered "yes" to Question No. 6, please answer the next question. If you answered "no," stop here.

7. What is the amount of actual damages sustained by Smith–Hemion as a result of its reliance on the false representations? $_____

8. Do you find that the defendants have been guilty of oppression, fraud, or malice?

\_\_\_\_ Yes \_\_\_\_ No

DATED: _____ _____

JURY FOREPERSON

---

The second form was a general verdict form requesting that the jury fill in the amount of liability, if any, it assessed for each cross-defendant.

The jury returned the special interrogatory with "yes" marked in response to questions # 1–6, the figure "$2,616,048" marked in response to question # 7, and "no" marked in response to question # 8. On the general verdict form, the jury placed a zero by the name of each cross-defendant.

The Court polled the jury together and individually and the jurors affirmed their verdict. Because of the Court's belief that the verdict was inconsistent, the jury was not discharged. Outside the presence of the jury, the Court requested counsel's input on further proceedings.

S–H requested judgment by the Court in its favor in accordance with the special interrogatory answer, citing Fed.R.Civ.P. 49(b); the Court declined to enter such judgment.

JF moved for a mistrial; the Court denied this motion. Counsel for Michael Jackson ("MJ"), a cross-defendant on related equitable claims which are being tried to the Court in the same proceeding as the jury claims against JF, suggested additional proposed interrogatories in order to ascertain the jury's intention; the Court declined to follow this suggestion as well. The Court, finding the verdict as submitted to be inconsistent, drafted a supplemental jury instruction reading as follows:

### SUPPLEMENTAL JURY INSTRUCTION # 5

As set forth in your answers to the Special Interrogatory, you have found that at least one defendant made false representations; that these representations were made recklessly or knowingly; that Smith–Hemion, acting with ordinary prudence, relied on those representations; that the representations were the cause of injury to Smith–Hemion; and that Smith–Hemion sustained damages in the amount of $2,616,048 as a result of its reliance on those representations.

You are instructed that the Special Interrogatory was intended as a guide for you to use in reaching a general verdict with respect to each individual defendant. Having found that at least one defendant was legally responsible for the damages sustained by Smith–Hemion, you must assess such damages against the responsible party or parties.

You are further instructed that when the acts or omissions of two or more persons contribute concurrently, and as proximate causes, to the injury and damages of another, each of such persons is liable. This is true regardless of the relative blame or fault of each.

Pursuant to Fed.R.Civ.P. 49(b), the Court sent the jury back for further deliberations. Despite the supplemental instruction, the jury, after deliberating further, did not submit a consistent verdict. Instead, two jurors—the foreperson (juror # 6) and juror # 8—wrote notes to the Court attempting to clarify their verdict, to explain to the Court their decision-making process, and to ask for further guidance.

The note from juror # 6 reads, in pertinent part, as follows: "We understood that our general verdict as stated, was based on fraud according to the definition included in the jury instructions. We came to a unanimous decision that all the elements required for fraud were not present. We would like clarification as to how we can award for 'fraudulent conduct' when we determined that fraud did not exist?" In pertinent part, the note from juror # 8 reads as follows: "I never at any time wished to side in favor of Smith & Hemion. I found no evidence of oppression or fraud or malice understanding your explanation saying if we found them not guilty of fraud then we would not award any damages."

The Court excused the jurors but did not discharge them. The Court then requested briefing from the parties on the proper course of action, and ordered proceedings continued until September 26, 1996. S–H has moved for judgment in its favor based on the jury's answers to questions # 1–7 of the special interrogatory, and in the alternative has moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. S–H has also requested dismissal of juror # 8, should the Court decide to allow further deliberations. JF has moved for judgment in favor of all cross-defendants based on its interpretation of the notes from jurors # 6 and # 8 as reflecting a unanimous verdict in favor of all cross-defendants. The Court has considered all papers and arguments. Its analysis follows.

*Analysis:*

**I. S–H's Motions for Judgment**

**A. In light of the jurors' notes, it is not clear that the special interrogatory answers accurately reflected the jury's intended verdict**

 S–H argues that the jury's written comments subsequent to the original verdict are not admissible in attempting to ascertain the jury's verdict. S–H is incorrect. Assuming for the sake of argument the correctness of S–H's premise that the special interrogatory is internally consistent and

represents factfinding that unambiguously favors a verdict for S–H, the written comments are admissible to the extent that they shed light on the content of the jury's intended verdict, rather than the mental processes or deliberations in reaching the verdict. In light of this content, a verdict for S–H is clearly inappropriate.

■ S–H cites Fed.R.Evid. 606(b) for the proposition that any inquiry into jurors' internal mental processes and deliberations is barred. While this is a correct statement of the general rule, this rule does not bar inquiry into an ambiguous or inconsistent verdict. 3 Weinstein, *Weinstein's Evidence* ¶ 606[04] at 606–30 (1995). "The reasons for [Fed. R.Evid. 606(b) ], namely, the dangers of uncertainty and of tampering with the jurors to procure testimony, disappear in large part if such investigation as may be desired is *made by the judge* and takes place *before the jurors' discharge* and separation." 8 Wigmore, *Evidence* § 2350 at 691 (McNaughton ed. 1961) (emphasis in original). Moreover, the rule, "by its own terms, is silent as to queries designed to confirm the accuracy of the verdict, and ... the rule therefore does not preclude a juror from testifying as to the potential miscommunication of the verdict." *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1548 (10th Cir.1993). Because the rule allows such inquiries, it must likewise allow consideration, prior to discharge, of jurors' unsolicited comments on an inconsistent verdict, where those comments relate to possible miscommunication by the jurors or misinterpretation by the Court of what the jurors actually decided, rather than how they reached their verdict.

Courts have held that the rule even permits *post*-discharge inquiry to determine *what* the jury decided, as contrasted with *how* or *why* it did so. *See McCullough v. Consolidated Rail Corp.*, 937 F.2d 1167, 1169–72 (6th Cir.1991) and cases cited therein; *Ferrante v. Metro–North Commuter R.R.*, 738 F.Supp. 106 (S.D.N.Y.1990).

■ As in all the above-cited cases, there is no doubt that here, the reasons for the rule do not apply: first, the verdict was already inconsistent, and thus uncertain; and second, there is no allegation of, nor was

there any opportunity for, jury tampering or other mischief. The jury was not discharged prior to the jurors' raising their concerns. In fact, the jurors were not even separated during the relevant period, as the jurors' notes were issued on the same day as the original verdict forms were submitted. Although the Court did not pose specific questions soliciting the jurors' notes, the purpose of sending the jury back for further deliberation after their original verdict forms were inconsistent was to clarify the inconsistent verdict by determining what the jury decided. The jury seems to have given its best efforts to effect such clarification and has failed to do so.

S–H is correct that to the extent that the jurors' notes reveal the jurors' mental processes or deliberations in attempting to reach a verdict, they ought to be disregarded in any case. Nonetheless, the statements that (1) according to the foreperson, the jury did not find that the elements of fraud were present, and (2) juror # 8 did not intend at the time she rendered her verdict that her verdict be in S–H's favor, are attempts to clarify the meaning of the verdict itself, not statements relating to jurors' mental processes in arriving at a verdict or to the deliberative process among the jurors. These statements thus can be considered by the Court.

After considering the statements to the limited extent set forth above, the Court finds that the notes indicate unambiguously that the jury did not intend to render a unanimous verdict for S–H at the time the verdict forms were originally submitted. Judgment in favor of S–H is therefore not appropriate.

S–H's motion for entry of judgment on answers to special interrogatories is therefore DENIED.

**B. The Court will not consider S–H's motion for judgment as a matter of law**

■ S–H requests that the Court grant judgment as a matter of law for S–H pursuant to Fed.R.Civ.P. 50(b). S–H cites no case in which any court has entertained such a motion after trial where no motion had been

made pursuant to Fed.R.Civ.P. 50 at any prior point in the proceedings. *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir.1983) and *Bonner v. Coughlin*, 657 F.2d 931 (7th Cir. 1981), cited by S–H as authority for the Court's power to do so, each involved the failure of a party that *did* move for a directed verdict at some point prior to the close of evidence to renew this motion at the close of evidence. The court held in both of these cases that such failure did not preclude renewing the motion after entry of the jury's verdict.

Here, by contrast, S–H has not at any prior time brought a motion, orally or in writing, pursuant to Fed.R.Civ.P. 50. While both *Bohrer* and *Bonner* involved motions to "renew," here there is nothing to renew. Where there is no motion to renew, neither the language of Fed.R.Civ.P. 50 nor any other authority supports a court's ability to entertain a new, rather than renewed, motion after the jury begins deliberations. The Court therefore declines to consider such a motion. S–H's motion for directed verdict is DENIED.

## II. JF's Motion

### A. The inconsistency between the special interrogatory answers on one hand, and the general verdict and the foreperson's note on the other, precludes judgment for defendants

■ JF contends that each cross-defendant is entitled to judgment on the jury's verdict. The Court declines to so find.

Despite counsel's arguments to the contrary, it would be a stretch for the Court to assume that the foreperson's characterization of the jury's findings in his jury note represent the jury's true verdict. The note is plainly inconsistent with the facts which the jury claimed to have found in its answers to special interrogatory answers # 1–7, and the foreperson did not retract those answers or otherwise clarify the inconsistency. While the Court may seek, and the jury may provide, a clarification or harmonization to elicit a view of the case that makes the jury's answers consistent, *see Morrison v. Frito–Lay, Inc.*, 546 F.2d 154, 160 (5th Cir.1977),

this Court is aware of no authority for simply ignoring un-retracted original answers in favor of new answers that conflict squarely with the old ones.

Consequently, the Court declines to assume that the jury intended a verdict for any family member. The verdict forms themselves are plainly inconsistent, as the Court found previously; the finding of each of the elements of fraud, along with the answer to question # 7, simply cannot be squared with the general verdict. Moreover, the record taken as a whole, including the completed verdict forms as well as the notes, does not support a finding that the jury unambiguously has rendered a unanimous verdict in favor of any or all defendants.

### B. Further interrogatories are unwarranted

■ JF argues that a further interrogatory might assist in clarifying the jurors' intent, suggesting the following as appropriate: "Have you come to a unanimous decision that all the elements required for fraud *were not present* as to each individual defendant?" (Emphasis in original.) The Court has considered this option. Although at first blush it seems a straightforward answer to the problem, the Court is troubled by the fact that such an interrogatory, if answered in JF's favor, would conflict irremediably with the answers submitted to interrogatory questions # 1–7, precluding judgment for JF.

The jury has not, as a group or individually, requested to amend its original answers or in any way disaffirmed those answers; rather, the foreperson's note apparently reflects a continued belief by at least the foreperson that the jury's inconsistent answers are somehow consistent. Under Fed. R.Civ.P. 49(b), "[w]hen the answers [to special interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered...." *Id.* Here, the Court cannot find that the original interrogatory answers, as affirmed in open court by each juror, are wholly void based on the soliciting by the Court of a further inconsistent answer from the jurors.

In light of the great time and effort already put into deliberations by the jury, as well as the jury's findings to date—which, as JF's counsel himself pointed out in arguing for a mistrial earlier in these proceedings, reveal the apparent inability of the jurors either to follow the instructions as given, to reach an internally consistent, unanimous verdict, or both—the Court declines to require such further deliberations. Whether because of confusing forms, a genuine dispute over the meaning of instructions or the weight of the evidence, an improper compromise, or other problems into which this Court may not inquire, the jury has made clear its inability to render a valid verdict.

JF's motion is therefore DENIED.

### III. The Court grants a new trial on its own motion

Accordingly, and with great reluctance in light of the resources expended to date by the Court, the jurors and the parties, the Court hereby ORDERS a mistrial and GRANTS a new trial on the Court's own motion pursuant to Fed.R.Civ.P. 49(b), finding this to be the fairest course of action at this time.

### IV. Disposition of pending equitable claims

In light of the foregoing, the Court believes that it does not have the power to make any findings on the alter ego claims between S–H and JF or the promissory estoppel claim between S–H and MJ, as each of these claims appears to have common factual issues with the claims for which both S–H and JF have the right to a jury trial. *Beacon Theatres v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959); *Granite State Ins. v. Smart Modular Tech.*, 76 F.3d 1023, 1027 (9th Cir.1996). Until the Court has rendered judgment on the claims tried to the jury, based on a jury verdict, voluntary dismissal with prejudice, or otherwise, the Court cannot render judgment on the claims tried to the Court.

Moreover, partial new trials "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133–34 (9th Cir.1995) (citing *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)). Given that there is an interdependence of issues, as well as an overlapping of proof, between the fraud claims and each of the claims tried to the Court, the Court finds it necessary to require a new trial on all claims which were the subject of the original trial. *Cf. Colonial Leasing v. Logistics Control Int'l*, 770 F.2d 479, 481–82 (5th Cir.1985) (holding that a complete mistrial was warranted where issue preclusion from judgment as a matter of law for failure of proof on one issue would impede a just and fair retrial and would lead to jury confusion and uncertainty).

### V. S–H's application to excuse juror from further deliberations

In light of the above disposition, S–H's application to excuse juror # 8 from further deliberations is DENIED as moot.

IT IS SO ORDERED.