TEEVEE TOONS, INC.
et al. Plaintiffs,

v.

**MP3.COM, INC., Defendant.**

No. 00 Civ. 3951(JSR).

United States District Court,
S.D. New York.

June 19, 2001.

Michael Elkin, Sharon P. Carlstedt, Thomas Lane, Thelen, Reid & Priest, L.L.P., New York City, for plaintiffs.

Jeffrey A. Conciatori, Michael Carlinsky, Orrick, Herrington & Sutcliffe, LLP, New York City, for defendant.

## OPINION AND ORDER

RAKOFF, District Judge.

The American jury system may yield countless benefits, but in this case it produced an uncounted, and unaccountable, result.

Asked to determine damages for each of 145 copyright infringements, an eight-person jury, on April 6, 2001, rendered awards of $0 for fifty-three of the infringements, $750 for fifteen of the infringements, $1248 for one of the infringements, $3125 for seventy-five of the infringements, and $50,000 for one of the infringements. The total—added only after the jury was polled and excused—came to $246,998 for plaintiffs TeeVee Toons, Inc., TVT Catalog Enterprises, LLC, TVT Music, Inc., and Wax Trax Records, Inc. (collectively, the "TeeVee Toons plaintiffs") and $49,875 for plaintiff Sascha Konietzko,[1] for a grand total of just under $300,000 that was duly reported by the media that evening. But after seeing the media reports, the foreperson and another juror called the Court that same evening and left voice-mail messages stating that the reported damages total of approximately $300,000 was incorrect as the jury had

determined a total award of approximately $3,000,000.

After informing counsel of these communications and staying entry of final judgment, the Court convened hearings on the following Monday and Tuesday, April 9 and 10, 2001, at which the Court and counsel jointly interviewed each juror individually *in camera*. *See* sealed transcripts, Apr. 9 & 10, 2001 (collectively "Tr."). Unanimously and unequivocally, the jurors stated that their decision had been to award a total verdict in the vicinity of $3 million and that the actual numbers entered on the verdict sheet were a result of calculation errors that had occurred in the process of converting the total award into awards for each individual infringement as required by the verdict sheet. *See* Tr. at 3–4, 7 (juror no. 6[2]), 11–12 (juror no. 1), 18–19 (juror no. 7), 22 (juror no. 2), 25–26, 29 (juror no. 3), 31, 35 (juror no. 4), 38–39 (juror no. 8), 51–54 (juror no. 5). All the jurors further agreed that the process of calculating the appropriate awards for the individual infringements within the framework of the agreed-upon total award had been entrusted to a single juror, who had performed the calculations on her own "Palm Pilot" handheld computer, and that none of the jurors had bothered to double check the calculations thereby obtained. *See* Tr. at 4 (juror no. 6), 11–12 (juror no. 1), 19 (juror no. 7), 22 (juror no. 2), 25–26, 27–28 (juror no. 3), 31 (juror no. 4), 39 (juror no. 8), 52 (juror no. 5).

In addition, juror number three produced, *sua sponte*, a sheet of scratch paper she had saved from the jury deliberations, on which she had written and circled the following:

1. The remaining plaintiff, Idea Records, Inc., had been previously dismissed from the case.

2. The foreperson.

2,469,098
446,000
2,915,098

Court Ex. 6 (under seal). The juror testified that the first number indicated the total award that the jurors had agreed to give the TeeVee Toons plaintiffs, the second number the total award that the jurors had agreed to give plaintiff Sascha Konietzko, and the third number the grand total. She further testified that all the jurors had looked at this paper and agreed to these sums. *See* Tr. at 28–29. Several other jurors similarly testified that the jury had divided their overall verdict into one award for Konietzko and another for the TeeVee Toons plaintiffs in approximately the same amounts as shown on juror number three's paper. *See id.* at 4, 18, 22, 38, 52.

■ From this evidence, it is manifest that the figures recorded in the verdict sheet, even though assented to in open court, do not reflect the verdict the jury actually agreed upon in their deliberations. While defendant protests that the Court may not consider the jurors' statements because of the prohibition embodied in Fed.R.Evid. 606(b) against receiving juror testimony to impeach a verdict, in fact Rule 606(b) "is silent regarding inquiries designed to confirm the accuracy of a verdict . . . . [and] juror testimony is admissible to show that the verdict delivered was not that actually agreed upon." *Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc.,* 836 F.2d 113, 116 (2d Cir.1987); *see Ferrante v. Metro–North Commuter R.R.,* 738 F.Supp. 106 (S.D.N.Y.1990). More generally, federal law distinguishes between inquiring into the jury's deliberative process, which Rule 606(b) forbids, and merely seeking to determine whether the verdict actually agreed to by the jury is the same as the verdict reported to the court, which the case law permits. Accordingly, the Second Circuit has held that a court may interview jurors and consider their testimony "to correct the mistaken transmission of the verdict from the jury," *i.e.,* "to ascertain what the jury decided [rather than] why they did so." *Attridge,* 836 F.2d at 117.

Here, the case for correcting the verdict on the basis of juror testimony is even stronger than in *Attridge* and *Ferrante,* in which jurors apparently misunderstood the courts' instructions regarding reduction of the jury award on the basis of the jury's apportionment of fault. While the precise mistakes made in the operation of the Palm Pilot are uncertain, it is clear that the errors were essentially mechanical in the process of breaking down the agreed-upon verdict into separate awards for each individual infringement. Inquiries into this error are even less likely to infringe on the jury's confidential deliberations than the inquiries into the jury's understanding of the court's instructions undertaken in *Attridge* and *Ferrante.*[3]

However, it is one thing to conclude that the verdict rendered in court was not the verdict actually agreed to and another to ascertain the precise amount of the verdict actually reached. Specifically, even though all the jurors remembered that the magnitude of the verdict they unanimously agreed to was approximately $3 million,

---

**3.** While, despite the Court's admonitions, one or two of the jurors interviewed in this case occasionally strayed into the realm of their thought processes and deliberations, the Court need not, and does not, consider such testimony in reaching the conclusion that the verdict agreed upon was not the verdict entered. To protect the sanctity of juror deliberations, however, the transcripts will remain under seal, as will the parties' briefs, all of which, however, will be docketed so as to be available for appellate review.

none independently remembered the exact number or the exact breakdown between the TeeVee Toons plaintiffs and Konietzko. While it seems likely that the scratch paper showing a total award of $2,915,098 is accurate, only the juror producing it affirmatively testified that this was the precise amount agreed to, and the Court concludes that this is an insufficient basis on which to correct the verdict. Accordingly, the only reasonable alternative is to retry the case.

The Court reaches this conclusion with some regret, since, arithmetic errors aside, the jury was attentive and conscientious and the case was well tried; indeed, nearly all the jurors expressed great remorse over allowing the arithmetic error to occur after their hard work, *see, e.g.,* Tr. at 7–8, 13, 20–21, 24, 25–26, 30, 36, 40.[4] Here, however, the error is plain and must be rectified if justice in this case is to be anything more than a formalized illusion.

Accordingly, no final judgment will be entered, but, instead, a new trial will be ordered. Counsel should promptly contact the Court to arrange for the date of the retrial.

SO ORDERED.

---

**4.** Similarly, the Court regrets not following its initial instinct (as embodied in the first draft of the verdict form provided to counsel) to have the jury itself add up the total award for each plaintiff and record it in their verdict, in which case they would have likely uncovered their error.