**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MILLENNIUM LABORATORIES, INC., a California corporation,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>AMERITOX, LTD., a Texas limited partnership,<br>*Defendant-Appellee*. | No. 13-56577<br><br>D.C. No.<br>3:12-cv-01063-<br>MMA-JMA<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued November 5, 2015
Submitted April 4, 2016
Pasadena, California

Filed April 4, 2016

Before: Susan P. Graber and Ronald M. Gould, Circuit
Judges, and Wiley Y. Daniel,* Senior District Judge.

Opinion by Judge Gould

---

* The Honorable Wiley Y. Daniel, Senior District Judge for the U.S.
District Court for Colorado, sitting by designation.

## SUMMARY**

### Lanham Act

The panel reversed the district court's grant of summary judgment in favor of the defendant on claims of trade dress infringement under the Lanham Act and unfair competition under California Business and Professions Code section 17200.

The panel held that there were triable issues as to whether the plaintiff's claimed trade dress—the visual layout of a urine test report—was functional, and thus disqualified for protection under the Lanham Act. The panel remanded the case for further proceedings.

### COUNSEL

Randall E. Kay (argued), Jones Day, San Diego, California; Craig E. Stewart and Matthew J. Silveira, Jones Day, San Francisco, California, for Plaintiff-Appellant.

Eric D. Miller (argued), Perkins Coie LLP, Seattle, Washington; Matthew F. Carmody and Michael R. Osterhoff, Perkins Coie LLP, Chicago, Illinois, for Defendant-Appellee.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GOULD, Circuit Judge:

Millennium Laboratories, Inc., appeals the district court's grant of summary judgment to Ameritox, LTD, on Millennium's claims of trade dress infringement under the Lanham Act and unfair competition under California Business and Professions Code section 17200. Millennium contends that: (1) the district court applied the incorrect standard for assessing the functionality of Millennium's trade dress; and (2) the district court erred by granting summary judgment to Ameritox on Millennium's claims. At the heart of this appeal, we consider whether a product's visual layout is functional, defeating a claim for trade dress infringement. The Ninth Circuit has not previously addressed the functionality of any publication formats. But several other circuits have done so. *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 657–59 (4th Cir. 1996) (concluding that the catalogue page format was not functional); *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (holding that the computer-generated report format was not functional); *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272–75 (10th Cir. 1988) (concluding that a greeting card format was not functional). We have jurisdiction under 28 U.S.C. § 1291.

**I**

Millennium and Ameritox compete in the medication monitoring industry, and sell urine-testing services to healthcare providers who treat chronic pain patients with powerful pain medications. The testing services provided by these companies help the healthcare providers to evaluate

whether patients are taking the pain medications as prescribed and to assess whether the patients are taking any non-prescribed drugs. Millennium gives these test results using its R.A.D.A.R.® Report. Ameritox gives its test results using its own RX Guardian™ Report.

A few years before this lawsuit was filed, both companies were revising the way they presented the urine-test results. In May 2011, Ameritox launched a new service known as "RXGuardian CD," which included a single graph. Millennium also intensified its efforts in late 2010, and, recognizing that consumers could easily read comparative and historical results in graphical format, turned to its marketing team to "assist[ ] in the formatting on the report." On June 2, 2011, Millennium released a sample R.A.D.A.R.® Report with its new design. Within the year, Ameritox began to reevaluate its report and the use of a single graph. Ameritox considered several designs, all of which used a design similar to Millennium's new report, and introduced its new format in March 2012.

On April 30, 2012, Millennium sued Ameritox for trade dress infringement under the Lanham Act and for unfair competition under California Business and Professions Code section 17200, alleging that Ameritox had copied its report design. Ameritox moved to dismiss the complaint, arguing that Millennium's claimed trade dress was functional and therefore did not qualify for protection. The district court dismissed the motion, ruling that "[c]onstruing Millennium's complaint liberally, it has alleged facts showing that competitors would not need the features of its report in order to compete without disadvantage."

Before discovery was complete, Ameritox moved for summary judgment on the Lanham Act claim, again arguing that Millennium's trade dress was functional. The district court granted the motion, and also concluded that Millennium's claim for unfair competition failed. Millennium appealed.

## II

The Lanham Act creates a cause of action for a party injured when another entity uses "any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a)(1)(A). This statute provides protection for a trade dress, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001); 15 U.S.C. § 1125(a)(3) (1994 ed., Supp. V), which is the "total image of a product," including features such as size, shape, color, texture, and graphics, *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 n.3 (9th Cir. 1998).

Like most intellectual property protections, trade dress protection exists to facilitate competition.

> It is well established that trade dress can be protected under federal law. The design or packing of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as

> to the origin, sponsorship, or approval of the goods. In these respects protection for trade dress exists to promote competition.

*TrafFix*, 532 U.S. at 28. But trade dress protection cannot be asserted for any functional features of a product.[1] 15 U.S.C. § 1125(a)(3) (1994 ed., Supp. V) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); 15 U.S.C. § 1125(a)(3) (1994 ed., Supp. V); *TrafFix*, 532 U.S. at 29 ("This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional."); *see also Clicks Billiards, Inc. v. SixShooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001); *Disc Golf*, 158 F.3d at 1006; *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842–43 (9th Cir. 1987).

---

[1] "To sustain a claim for trade dress infringement, [the plaintiff] must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. SixShooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (citing *Disc Golf*, 158 F.3d at 1005 and *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987)). The district court granted summary judgment solely on the ground that Millennium's claimed trade dress is functional, without assessing the other two required elements. Because functionality is the sole issue before us, we assess only that element. We make clear, however, that our ruling does not preclude summary judgment or partial summary judgment for Ameritox or for Millennium on either of the other two elements if the district court concludes that such is appropriate.

This limitation reflects a balance of considerations affecting the competitive process and consumer benefit. Although Congress does not want consumers to be confused about a product's source, it also does not want to restrict the availability and use of functional features that enhance the utility of the product. *TrafFix*, 532 U.S. at 28–29. This free competition allows manufacturers not only to compete with sometimes necessary features, but also to build off the features' utility, creating better products. As the Supreme Court has explained, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Id.* at 29. And copying can lead to "salutary effects in many instances." *Id.*

Consider the following example: a car manufacturer places headlights at the front of the vehicle to light the road when dark. Such lights might have some distinctive appeal that could be identified with the first manufacturer to use them, but having lights in the front of the vehicle to illuminate a dark road also has a functional benefit. Once the public understands it can purchase a vehicle that allows safe driving at night, other manufacturers may not even be able to compete without some similar lighting system and the original manufacturer may gain a monopolistic stronghold on the car market, with effective barriers to entry and competition. The functionality limitation on trade dress protection eliminates this problematic result. At the same time, it is not hard to imagine variants of the car lighting system that at some point would deserve trade dress protection. For example, while some lighting system at the front of the car may be functional, a car manufacturer may be

able to claim a protectable trade dress for a particular lighting pattern such as using ten small light bulbs in a triangular pattern instead of one big light bulb.

Here, the parties dispute whether the layout of Millennium's R.A.D.A.R.® Report is functional. The parties also dispute the appropriate test to apply to determine functionality. Interpreting the Lanham Act, the Supreme Court has held that "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982). Expanding on this test, the Court explained further that a functional feature is one the "exclusive use of [which]. . . would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (citing *Inwood Labs.*, 456 U.S. at 850 n.10); *see also TrafFix*, 532 U.S. at 32–33. The Court later clarified that the quoted passage in *Qualitex* was not meant to replace the test outlined in *Inwood Laboratories*, but instead was meant to be a secondary question. *See TrafFix*, 532 U.S. at 33 ("Where the design is functional under the *Inwood* formulation there is no need to proceed further to consider if there is a competitive necessity for the feature.").

In 1998, three years before *TrafFix* clarified the relationship between *Inwood Laboratories* and *Qualitex*, we outlined a four-factor functionality test: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf*, 158 F.3d at 1006. This test has been applied most often in cases

involving utilitarian, physical devices. *See, e.g.*, *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 685–87 (9th Cir. 2012) (traction hoist); *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603–05 (9th Cir. 2003) (bike bottle). *Disc Golf* and the two cases on which it relied to create its four-factor test also involved physical devices. 158 F.3d at 1006 (Frisbee® goal); *Int'l Jensen*, 4 F.3d at 821 (audio speaker); *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 513(9th Cir. 1989) (cantilevered clamp).

Because most of these cases have focused on physical devices, we have questioned whether the *Disc Golf* four-factor test is appropriate in cases involving aesthetic trade dress claims for designs or layouts. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 n.8 (9th Cir. 2006) ("Our long-standing test for functionality largely excluded aesthetic considerations . . . ."); *Clicks Billiards*, 251 F.3d at 1260 ("[The *Disc Golf*] factors do not translate easily from application in the context of utilitarian product features . . . to application in the context of services . . . ." (citation omitted)). Instead, when assessing these aesthetic trade dress claims, we have focused our analysis on the *Qualitex* language—whether the protection of the design would put competitors at a disadvantage. *Au-Tomotive Gold*, 457 F.3d at 1072–73 ("In the case of a claim of aesthetic functionality, an alternative test inquires whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." (citing *TrafFix*, 532 U.S. at 33)); *Clicks Billiards*, 251 F.3d at 1261 ("[T]he ultimate issue on functionality is whether Clicks' 'particular integration of elements leaves a multitude of alternatives to the' pool hall 'industry that would not prove confusingly similar to' its trade dress.").

But we have clarified that this divergence between physical and aesthetic products is not necessary. In *Au-Tomotive Gold*, we held that after *Qualitex* and *TrafFix*, "the test for functionality proceeds in two steps." *Au-Tomotive Gold*, 457 F.3d at 1072. For the first step, "courts inquire whether the alleged 'significant non-trademark function' satisfies the *Inwood Laboratories* definition of functionality—'essential to the use or purpose of the article [or] affects [its] cost or quality.'" *Id.* (alteration in original) (quoting *TrafFix*, 532 U.S. at 32–33) ("Step One"). We have since incorporated this part of *Inwood Laboratories* into the *Disc Golf* four-factor test. *Id.* at 1072 n.8. If the claimed trade dress is determined to be functional under Step One, then "the inquiry is over." *Id.* at 1072. If not, the court must proceed to the second step and address aesthetic functionality by "inquir[ing] whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Id.* (citing *TrafFix*, 532 U.S. at 33) ("Step Two").

Millennium argues that *Disc Golf* is inapplicable and should be abandoned. First, Millennium argues that the *Disc Golf* test was used only in cases involving physical devices, not in cases involving aesthetic formats. That argument, however, overlooks that the *Disc Golf* factors reflect the *Inwood Laboratories* definition of functionality—"essential to the use or purpose of the article or if it affects the cost or quality of the article." *See Disc Golf*, 158 F.3d at 1006 (quoting *Qualitex*, 514 U.S. at 165). Moreover, *Disc Golf* did not suggest that the four factors were applicable only to physical devices, but held that the four factors were "[t]o determine whether a product feature is functional." *Id.* Here, Millennium's R.A.D.A.R.® Report layout is a product feature.

Second, Millennium argues that the *Disc Golf* factors should be reconsidered because some of the factors were omitted from the Supreme Court's analysis in *TrafFix*. This argument is unavailing. The Supreme Court did not discredit the *Disc Golf* four-factor test, *see TrafFix*, 532 U.S. at 32–35, and we have held already that the test still applies after *TrafFix* was decided, *Au-Tomotive Gold*, 457 F.3d at 1072, 1072 n.8; *Talking Rain*, 349 F.3d at 603.

## III

We review de novo a district court's decision to grant summary judgment. *Clicks Billiards*, 251 F.3d at 1257 (citing *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc)). We must determine, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, whether there are any genuine issues of material fact in dispute and whether the district court correctly applied the relevant substantive law. *Id.* "[F]unctionality is generally viewed as an intensely factual issue." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (citing *Vuitton Et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir. 1981)). Under the *Au-Tomotive Gold* two-step test, the district court erred by granting summary judgment to Ameritox on Millennium's trade dress claim.

### A.  Step One

Under Step One, we first address whether there are genuine issues of material fact regarding functionality. Millennium describes its alleged trade dress as follows: a "graphical format" which includes "side-by-side presentation of a bell curve on the left, and a historical plot graph on the

right"; the format uses "a combination of bold and dashed lines on the bell curve graph and a combination of numbers and letters on the plot graph on the right"; the report uses "little verbiage to accent the graphical features of the combination of charts and place[s] the combination of graphical features within a solid border." Millennium does not assert that it should have a trade dress on graphed results generally, but on the specific layout that it chose. For good reason: "[I]n evaluating functionality as well as the other elements of a trade dress claim, it is crucial that we focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards*, 251 F.3d at 1259 (emphasis in original). Further, "functional elements that are separately unprotectable can be protected together as part of a trade dress." *Fuddruckers*, 826 F.2d at 842.

As noted above, the four functionality factors are "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf*, 158 F.3d at 1006. "No one factor is dispositive; all should be weighed collectively." *Id.* We must consider, viewing the evidence in the light most favorable to Millennium, whether a jury could conclude that the R.A.D.A.R.® Report's specific visual layout is non-functional.

We conclude that, on the first factor, genuine issues of material fact remain regarding whether Millennium's claimed trade dress has any utilitarian advantage. Here, Millennium used its marketing department and graphic designers to create a "presentable product," and to "distinguish" Millennium

"from its competitors."  In response to Ameritox's motion for summary judgment, Millennium also offered the declaration of Jennifer Strickland, Millennium's Director of Clinical Strategy, who said that the elements of the "graphical format are aesthetic and non-functional."  A jury could conclude that, although placing the graphs on the same page serves the function of allowing easy and facile review of the medical results, the alleged trade dress—the side-by-side placement of the graphs and other features, such as minimal text—is merely aesthetic, not functional.  The first factor thus weighs against summary judgment for Ameritox.

As to the second factor, a jury could conclude that many alternative designs were available.  To give a few examples: There could be side-by-side graphs arranged in opposite order.  There could be one graph above the other.  There could be pie charts instead of the charts used.  One could fashion many such examples.  The second factor, too, weighs against summary judgment for Ameritox.

Turning to the third factor, there is some question whether Millennium actually advertised the functionality of its report's format.  Though Millennium's website promoted the R.A.D.A.R.® Report, a reasonable jury could find that the advertisements focused on the benefits of the "graphed results" rather than on the benefits of the specific layout.  For that reason, the third factor weighs against summary judgment for Ameritox.

Finally, we conclude that the fourth factor is at most neutral.  Jennifer Strickland's declaration noted that "[t]he addition of the graphical format to Millennium's R.A.D.A.R.® Report has not resulted in a costs savings," but "has resulted in an increase in costs."

Looking at the four *Disc Golf* factors together, and viewing the evidence in the light most favorable to Millennium, we conclude that the district court erred in granting summary judgment to Ameritox.  The key point is that even if a comparison of results is functional, this could be presented in many ways, and the precise format used by company asserting trade dress is not necessarily functional. A reasonable jury could conclude that Millennium's trade dress is not functional under Step One of the *Au-Tomotive Gold* two-step test.

### B.  Step Two

Because Millennium's claimed trade dress is not functional as a matter of law under Step One, we next assess whether it is functional as a matter of law under Step Two—"whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Au-Tomotive Gold*, 457 F.3d at 1072 (citing *TrafFix*, 532 U.S. at 33).  Even assuming that a document describing the results of urine analysis could be considered aesthetically functional, "aesthetic functionality has been limited to product features that serve an aesthetic purpose wholly independent of any source identifying function." *Id.* at 1073.  Here, Millennium's chosen design for its test results was, at least in part, crafted to distinguish the R.A.D.A.R.® Report from its competitors, and not simply to attract consumers.   Because Millennium has presented evidence that the graphical format served in part a source-identifying function, we conclude that Millennium has presented enough evidence to allow a jury to assess the question of aesthetic functionality.

## IV

We also reverse the district court's decision to grant summary judgment on Millennium's California unfair competition claim.  The district court relied on *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994), which clarified that trade dress infringement claims under the Lanham Act and unfair competition claims under California Business and Professions Code section 17200 are inextricably linked.  Because we hold that summary judgment was not appropriate on Millennium's trade dress claim, we hold the same for its unfair competition claim.

## V

We reverse the district court's grant of summary judgment in favor of Ameritox on Millennium's claim of trade dress infringement under the Lanham Act and unfair competition under California Business and Professions Code section 17200, and we remand for further proceedings. Although it is functional to have a system to portray test results, there is a genuine fact issue whether the precise manner in which Millennium presented its results was functional.

**REVERSED and REMANDED**.