*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Jonatan O. ROSARIOMARTINEZ, Corporal
United States Marine Corps, Appellant

**No. 25-0102**
Crim. App. No. 202300154

Argued November 19, 2025—Decided June 2, 2026

Military Judges: Ryan C. Lipton (arraignment),
Benjamin A. Robles (motions), and
Adam J. Workman (trial and post-trial)

For Appellant: *Captain Katherine Malcolm*, USMC (argued).

For Appellee: *Lieutenant Erin H. Bourneuf*, JAGC, USN (argued); *Major Mary Claire Finnen*, USMC, and *Brian K. Keller*, Esq. (on brief); *Colonel Iain D. Pedden*, USMC.

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge JOHNSON joined. Judge MAGGS filed a separate opinion concurring in the judgment.

————————

Judge HARDY delivered the opinion of the Court.

The Government charged Appellant with two specifications of sexual assault under Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. A general court-martial consisting of an eight-member panel with enlisted representation acquitted Appellant of the first specification but found Appellant guilty of the second specification. Based on information learned during a "hot wash" session[1] with the senior panel member, Captain (Capt) Sierra, Appellant's military trial defense counsel came to believe that Appellant's panel misunderstood how nonunanimous verdicts and hung juries work in the military justice system and erroneously thought that a minimum of six votes were required to convict *or* to acquit Appellant on each charge. Appellant's defense counsel obtained an affidavit from Capt Sierra affirming this misunderstanding and further stating that the panel initially conducted several rounds of voting where three or more members voted to find Appellant not guilty of the second specification. The affidavit went on to state that if the members had properly understood the voting rules, Capt Sierra would have filled out the findings worksheet to reflect findings of not guilty for both specifications.

After obtaining Capt Sierra's affidavit, Appellant's defense counsel filed a post-trial motion asking the military judge to correct the verdict pursuant to Rules for Court-Martial (R.C.M.) 922 and 1104. After receiving briefs from both parties and conducting a post-trial Article 39(a) hearing,[2] the military judge issued a written ruling declining to consider Capt Sierra's affidavit and denying Appellant's motion. The United States Navy-Marine Corps Court of

---

[1] A hot wash is a term used by military personnel for an informal, post-trial meeting between participants in a court-martial to review the high and low points of the proceedings. *United States v. RosarioMartinez*, 85 M.J. 535, 540 n.11 (N-M. Ct. Crim. App. 2024).

[2] *See* Article 39(a), 10 U.S.C. § 839(a) (authorizing hearings outside the presence of the members for specific purposes).

Criminal Appeals (NMCCA) affirmed. *RosarioMartinez*, 85 M.J. at 545.

On appeal to this Court, we specified the following issue:

> Did the military judge err in finding the affidavit of the senior member to be incompetent evidence under MRE 606(b)(2)(C) and in denying Appellant's motion for appropriate relief to correct an error in the findings worksheet?

*United States v. RosarioMartinez*, 85 M.J. 463 (C.A.A.F. 2025) (order granting review).

For the reasons set forth below, we hold that the military judge did not abuse his discretion when he declined to consider Capt Sierra's affidavit after finding that it was not competent evidence. We therefore affirm the findings and sentence as affirmed by the NMCCA.

## I. Background

The Government charged Appellant with two specifications of sexual assault under Article 120, UCMJ, following the victim's report that Appellant had assaulted her in her barracks room after the two had gone out drinking together. The two specifications were pleaded in the alternative based on contingencies of proof. The first specification was charged under the theory that Appellant performed a sexual act upon the victim when he knew or reasonably should have known that she was asleep. The second specification was charged under the theory that Appellant performed a sexual act upon the victim without her consent.

### A. Appellant's Court-Martial

Appellant's general court-martial consisted of eight members with enlisted representation. Following the presentation of evidence, the military judge instructed the members on voting, including the following:

> The concurrence of at least three-fourths of the members present when the vote is taken is required for any finding of guilty. Since we have

3

eight members, that means six members must
concur in any finding of guilty.

If you have at least six votes of guilty of any
offense, then that will result in a finding of guilty
for that offense. *If fewer than six members vote for
a finding of guilty, then your ballot resulted in a
finding of not guilty.* You may reconsider any find-
ing prior to its being announced in open court.
However, after you vote, if any member expresses
a desire to reconsider any finding, open the court
and the president should announce only that a
consideration of a finding has been proposed.

(Emphasis added.) Neither party objected to the instruc-
tions or requested any additional instructions. The military
judge did not provide a written copy of the voting instruc-
tions to the panel.

The panel deliberated for two days. On two separate oc-
casions, the members requested to reopen the court-mar-
tial, but neither of these occasions concerned questions
about the findings worksheet or the panel instruction on
voting. After the panel reached a verdict, the military judge
reviewed the findings worksheet and asked Capt Sierra to
announce the panel's findings. Capt Sierra stated that the
court-martial found Appellant not guilty of the first speci-
fication, but guilty of the second specification—sexual as-
sault without consent—under Article 120, UCMJ. After
Appellant elected to be sentenced by the military judge, the
military judge excused the panel and instructed the mem-
bers not to discuss their deliberations with anyone unless
ordered to do so by a court. That same day, the military
judge sentenced Appellant to a dishonorable discharge and
eighteen months of confinement.

### B. Capt Sierra's Affidavit

In the days following trial, Appellant's two defense
counsel conducted a hot wash with Capt Sierra, the senior
panel member, to receive feedback on their advocacy. Dur-
ing the conversation, Capt Sierra asked how the military
justice system handles hung juries. Appellant's counsel ex-
plained to Capt Sierra that hung juries do not exist in the

military, and that when fewer than three-quarters of the panel vote to convict, the result is an acquittal. Upon hearing this, Capt Sierra said " '[w]ell, then we acquitted your client' " or words to that effect. Capt Sierra further told Appellant's counsel that the panel had conducted multiple votes in the absence of any vote to reconsider—several of which rendered fewer than six votes for guilty—before the panel finally reached six votes in favor of finding Appellant guilty of the second specification. At this point, Appellant's counsel ended their conversation with Capt Sierra and sought guidance from their supervisors.

After being encouraged by their supervisors to seek additional information from Capt Sierra, Appellant's counsel met with Capt Sierra again the next day. At this second meeting, Capt Sierra executed an affidavit describing what he had shared with defense counsel the day before. The affidavit stated that: (1) the members had a mistaken understanding of the military judge's instructions and believed that six votes were required either to convict or to acquit Appellant; (2) several rounds of votes had been taken by the panel using secret ballots with three or more members voting to find Appellant not guilty of the second specification; and (3) if the members properly understood the voting rules, Capt Sierra would have filled out the findings worksheet to reflect findings of not guilty for both specifications.[3] The affidavit ended with a request by Capt Sierra to "correct the findings worksheet to accurately reflect the correct findings of the panel."

### C. Appellant's Motion for Appropriate Relief

A few days after his defense counsel obtained the affidavit, Appellant filed a motion for appropriate relief asserting that the finding of guilty announced by Appellant's court-martial was erroneous. In his motion, Appellant asked the military judge to correct the alleged error in the members' findings worksheet as revealed by Capt Sierra.

---

[3] A redacted copy of the affidavit is attached to this opinion in the Appendix.

Although Military Rule of Evidence (M.R.E.) 606(b)(1) generally prohibits a military judge from receiving a member's affidavit about the panel's deliberations, Appellant argued that Capt Sierra's affidavit qualified as competent evidence that the military judge could consider under the rule's exception for testimony about a mistake in entering the findings on the findings form. *See* M.R.E. 606(b)(2)(C). Appellant further argued that the military judge had the authority to correct the error on the findings form under both R.C.M. 922 and R.C.M. 1104.

After the Government filed a written response in opposition to Appellant's motion, the military judge conducted an Article 39(a) hearing to address Appellant's motion for appropriate relief and a second unrelated motion. The military judge declined Appellant's request to produce Capt Sierra to provide sworn testimony, but he did hear argument on the motion from both parties.

Eleven days later, the military judge issued a written ruling denying Appellant's motion. The military judge held that he could not consider Capt Sierra's affidavit pursuant to M.R.E. 606 because it was a forbidden inquiry into the panel's deliberative process and did not fall under any M.R.E. 606(b) exception. The military judge concluded that the specific M.R.E. 606(b)(2)(C) exception asserted by Appellant applied to "clerical errors" and was therefore not implicated by the statements in the affidavit. The military judge emphasized that: (1) the senior member provided a copy of the findings worksheet to the military judge at the conclusion of deliberations; (2) the worksheet was filled out correctly and indicated a finding of guilty for the second specification; and (3) the senior member responded affirmatively to the military judge's question whether the worksheet accurately reflected the members' findings.

Assuming arguendo that the affidavit or Capt Sierra's sworn testimony would be proper evidence for the court's consideration, the military judge further held that the evidence would still be improper to impeach the findings

under R.C.M. 923.[4] The military judge determined that the findings were proper on their face and that under R.C.M. 923 voting irregularities would not be a proper basis to impeach the findings.

The convening authority took no action on the findings and approved the sentence. Appellant appealed to the NMCCA but did not challenge the military judge's ruling on his motion for appropriate relief.[5] In his petition to this Court, Appellant raised three issues and supplemented his petition with a single issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). This Court declined to grant review of any of those issues, but specified the following issue for review:

> Did the military judge err in finding the affidavit of the senior member to be incompetent evidence under MRE 606(b)(2)(C) and in denying Appellant's motion for appropriate relief to correct an error in the findings worksheet?

*RosarioMartinez*, 85 M.J. at 463 (order granting review).

## II. Discussion

### A. Preservation of the M.R.E. 606(b)(2)(C) Issue

Before we can consider the specified issue, the Government raises a threshold question that we must address. Noting that Appellant failed to challenge the military judge's denial of his motion for appropriate relief before the NMCCA, the Government argues that the military judge's ruling is now "law of the case" and that Appellant should

---

[4] R.C.M. 923 states: "Findings that are proper on their face may be impeached only when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member."

[5] On appeal before the NMCCA, Appellant asserted two assignments of error: "(1) whether unlawful command influence (UCI) occurred during the members' deliberations; and (2) whether Appellant was entitled to a unanimous verdict." *RosarioMartinez*, 85 M.J. at 538.

be bound by the military judge's decision. Although the Government concedes that the law-of-the-case doctrine is discretionary, the Government argues that this case does not involve the kind of "manifest injustice" that this Court has previously recognized as justifying a departure from our usual practice.

Because this Court specified the issue whether the military judge erred when he denied Appellant's motion for appropriate relief, the Government's objection is really a question about this Court's authority to specify and address the issue more than it is a question about whether Appellant waived the issue or should be estopped from raising it before this Court. When questions arise about our authority and the answers are not specified by the UCMJ, this Court typically turns to the Supreme Court for guidance about federal appellate courts' authority to review an issue. *See B.M. v. United States*, 84 M.J. 314, 317 (C.A.A.F. 2024), *cert. denied*, 145 S. Ct. 984 (2024) (discussing the limitations that this Court places on its own authority to act as a prudential rather than a legal matter).

To answer the Government's question, we look to the Supreme Court's practice with respect to its analogous "pressed or passed upon" jurisprudence. When the Supreme Court exercises its appellate jurisdiction over the inferior federal courts, it is settled practice that the Supreme Court generally will not consider issues "not pressed or passed upon" by the court below even when the court otherwise has jurisdiction. *McGoldrick v. Compagnie Generale Transatlantique*, 309 U.S. 430, 434 (1940). However, this practice is prudential, and the Supreme Court reserves discretion to address issues not pressed or passed upon by the court below in "exceptional cases." *Id.* In most cases, the Supreme Court declines to address issues not pressed or passed upon below. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 468 n.12 (1983) (declining to address an issue that was not raised below because it was not an exceptional case); *United States v. United Foods, Inc.*, 533 U.S. 405, 416-17 (2001) (same); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 237 (1990) (same), *holding modified by City of*

*Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004); *FTC v. Grolier Inc.*, 462 U.S. 19, 23 n.6 (1983) (same); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 147 n.2 (1970); *Lawn v. United States*, 355 U.S. 339, 362 n.16 (1958) (same); *Blair v. Oesterlein Mach. Co.*, 275 U.S. 220, 225 (1927) (same); *Duignan v. United States*, 274 U.S. 195, 200 (1927) (same).

But in "exceptional circumstances," the Supreme Court has departed from its usual practice. *United States v. Mendenhall*, 446 U.S. 544, 551 n.5 (1980) (citing *Youakim v. Miller*, 425 U.S. 231, 234 (1976); *Duignan*, 274 U.S. at 200). For example, in *Carlson v. Green*, the Supreme Court addressed a question on the merits that was not raised at either the district court or the court of appeals. 446 U.S. 14, 17 n.2 (1980). Although the Supreme Court recognized it normally does not decide issues not presented below, it also noted that it was not precluded from doing so. *Id.* In *Carlson*, where "the issue [was] squarely presented and fully briefed," the Supreme Court decided to exercise its discretion to address the "important, recurring issue" on the merits in the interest of judicial administration. *Id.*

In this case, neither party contests this Court's jurisdiction over this case under Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3) (2024). Having found good cause to consider whether the military judge erred by denying Appellant's motion for appropriate relief, this Court specified the M.R.E. 606(b)(2)(C) issue, which was then fully briefed and argued by the parties. Although we agree with the Government that we could—and normally would—decline to answer that question on the grounds that it was not pressed or passed upon by the NMCCA below, we believe that this is an exceptional case that warrants departure from our general practice.

In this case, Appellant's defense counsel investigated and preserved the M.R.E. 606(b)(2)(C) issue immediately upon meeting with Capt Sierra. The issue was fully briefed by both parties and litigated before the military judge who issued a nine-page written ruling denying Appellant's motion. Neither party has suggested that their ability to

litigate the case before this Court has been prejudiced in any way by the fact that Appellant failed to raise the issue before the NMCCA. Similarly, our review of the issue has not been inhibited by the fact that the issue was not pressed or passed upon below. Considering that this case addresses the military justice system's unique application of nonunanimous verdicts and involves a claim of critical importance—whether the findings worksheet accurately reflected the findings of the panel—we exercise our discretion to depart from our usual practice and address the issue on the merits.

## B. Whether the Military Judge Erred by Denying Appellant's Motion for Appropriate Relief

### 1. Standard of Review

This Court applies principles of statutory construction when construing the Military Rules of Evidence and reviews questions of statutory construction de novo. *United States v. Kohlbek*, 78 M.J. 326, 330 (C.A.A.F. 2019). When a verdict's validity is challenged, a military judge has broad discretion to determine whether to investigate the verdict and, if so, what kind of investigation to perform. *United States v. Lambert*, 55 M.J. 293, 295-96 (C.A.A.F. 2001). This Court reviews those decisions only for abuse of discretion. *Id.* at 296. A military judge "abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013) (citation omitted) (internal quotation marks omitted).

### 2. Discussion

The military judge denied Appellant's motion after determining that Capt Sierra's affidavit was not competent evidence that the military judge could consider under M.R.E. 509 and M.R.E. 606 because no exception under M.R.E. 606(b)(2) applied. M.R.E. 509 instructs that panel deliberations "are privileged to the extent that such

matters are privileged in trial of criminal cases in the United States district courts" except as provided in M.R.E. 606. Turning to M.R.E. 606(b)(1), that rule generally prohibits members from testifying about the panel's deliberations, including "any statement made or incident that occurred during the deliberations" or "any member's mental processes concerning the finding or sentence." The rule also bars a military judge from "receiv[ing] a member's affidavit or evidence of a member's statement on these matters." *Id.*

These prohibitions are subject to three exceptions under M.R.E. 606(b)(2), which permit member testimony about whether:

> (A) extraneous prejudicial information was improperly brought to the members' attention;

> (B) unlawful command influence or any other outside influence was improperly brought to bear on any member; or

> (C) a mistake made in entering the finding or sentence on the finding or sentence forms.

The third exception was added to the rule in 2013. *See* Exec. Order No. 13,643, 78 Fed. Reg. 29559 (May 15, 2013) (adding M.R.E. 606(b)(2)(C)). To date, this Court has yet to formally consider the new exception's scope.

Appellant argues that the M.R.E. 606(b)(2)(C) exception applies to the facts of this case because—as explained in Capt Sierra's affidavit—the panel members misunderstood the voting procedures and thus made a "mistake" (as contemplated by M.R.E. 606(b)(2)(C)) when they completed the findings worksheet by marking "guilty" when they had initially voted to find Appellant "not guilty." Appellant contends that the exception's plain language allows for testimony in these circumstances, which Appellant describes as "a failure to properly memorialize the outcome of the initial, valid vote." We disagree.

M.R.E. 606(b)(2)(C) permits testimony about "a mistake made in entering the finding" on the appropriate form. The *Manual for Courts-Martial, United States* does not provide

any additional guidance about the exception's application. In such circumstances, the President has directed that courts-martial apply "the Federal Rules of Evidence and the case law interpreting them." M.R.E. 101(b)(1). Accordingly, when this Court previously considered M.R.E. 606's exceptions in *United States v. Loving*, 41 M.J. 213, 239 (C.A.A.F. 1994), this Court looked to Fed. R. Evid. 606 and the corresponding Advisory Committee Notes for guidance about the scope of M.R.E. 606 and its exceptions.

In *Loving*, the appellant sought to introduce affidavits obtained from three members nearly four years after his court-martial was held alleging that the panel failed in multiple ways to follow the military judge's instructions during sentencing deliberations. *Id.* at 232. This Court held that members' post-trial affidavits were not competent evidence as to any improper voting procedures during the sentencing deliberations. *Id.* at 236-39. This Court recognized that M.R.E. 606 and Fed. R. Evid. 606 were "identical" other than the military rule's reference to unlawful command influence. *Id.* at 235. This Court further noted that this construction "is consistent with the statutory mandate in Article 36(a), UCMJ, 10 USC § 836(a)," which empowers the President to promulgate procedures that "'apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts.'" *Id.*

As we did in *Loving*, we look again to the federal rule and the Advisory Committee Notes for guidance about the scope of the analogous federal exception. In addition to being the approach recommended by M.R.E. 101(b)(1), doing so is consistent with the President's actions in 2016, when he amended the Military Rules of Evidence to bring them into greater alignment with the Federal Rules of Evidence. *See* Manual for Courts-Martial; Amendments to Appendix 22, 81 Fed. Reg. 15278-01, 15289 (Mar. 22, 2016).

Fed. R. Evid. 606 was amended in 2006 to allow judges to consider evidence about "a mistake in entering the verdict onto the verdict form." Fed. R. Evid. 606(b)(3) advisory committee note to the 2006 amendment. Seven

years later, the President added M.R.E. 606(b)(2)(C) to the list of exceptions in the military rule. *See* Exec. Order No. 13,643, 78 Fed. Reg. 29559 (May 15, 2013). Today, M.R.E. 606(b) remains essentially identical to Fed. R. Evid. 606(b), except for minor changes to accommodate court-martial terminology.

The Advisory Committee Note addressing the 2006 amendment to Fed. R. Evid. 606(b)(3) instructs that the rule was amended in direct response to "a divergence between the text of the Rule and the case law that has established an exception for proof of clerical errors." Fed. R. Evid. 606 advisory committee note to the 2006 amendment (citing *Plummer v. Springfield Term. Ry.*, 5 F.3d 1, 3 (1st Cir. 1993) (holding "that juror testimony regarding an alleged clerical error, such as announcing a verdict different than that agreed upon, does not challenge the validity of the verdict or deliberation of mental processes, and therefore is not subject to Rule 606(b)"); *Teevee Toons. Inc. v. MP3 Com. Inc.*, 148 F. Supp. 2d 276, 278 (S.D.N.Y. 2001) (noting that Fed. R. Evid. 606(b) was previously silent regarding inquiries designed to confirm the accuracy of a verdict)). The Note clarified that the exception was to be narrow—that testimony concerning "clerical errors" committed while entering findings in the findings worksheet triggers the exception, but testimony pertaining to misunderstandings about the consequences of the jury's results or *the misapplication of instructions* are explicitly prohibited because they pertain to the jurors' mental processes.[6] *Id.*

---

[6] Part of the Advisory Committee Note for the 2006 amendment reads "[t]he broader exception [for allowing proof of mistakes in entering the verdict] is rejected because an inquiry into whether the jury misunderstood or misapplied an instruction goes to the jurors' mental processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon." *Id.* The Note further explains that the amendment's exception "is limited to cases such as where the jury foreperson wrote down, in response to an interrogatory, a number different from that agreed upon by the jury, or mistakenly stated

Here, Capt Sierra's affidavit fails to identify any evidence of a clerical mistake being made when he entered the panel's findings on the findings worksheet. Instead, the affidavit documents the panel's alleged misunderstanding and misapplication of the military judge's instructions for voting during deliberations. Thus, this case would seem to fall squarely within the Advisory Committee's guidance that forbids testimony challenging the jury's misapplication of the judge's instructions.

Nevertheless, Appellant urges us to adopt an expansive interpretation of M.R.E. 606(b)(2)(C) and follow the United States Court of Appeals for the Fifth Circuit's approach in *United States v. Dotson*, where that court held that the district court did not err when it heard testimony from the jury foreman about the jury's deliberations and then corrected the verdict to show that the defendant was acquitted—rather than found guilty—of a single count. 817 F.3d 1127, 1130 (5th Cir. 1987). We decline Appellant's invitation for three reasons.

First, as Appellant concedes, the Fifth Circuit's decision in *Dotson* was issued decades before the addition of the exception for clerical errors to Fed. R. Evid. 606(b). Thus, it provides little insight into the application of the current federal rule, and even less into the scope of M.R.E. 606(b)(2)(C).

Second, in *Dotson*, the judge did not consider any testimony from the jurors about *how* the jury reached its verdict. The jurors only stated that the verdict announced in court did not match their actual vote. Here, Capt Sierra's affidavit does not even mention the panel's final vote. Instead, it focuses on the early stages of the panel's deliberations and the panel's misunderstanding of the military judge's instructions.

---

that the defendant was 'guilty' when the jury had actually agreed that the defendant was not guilty." *Id.* (citation omitted) (internal quotation marks omitted).

And finally, unlike the jury in *Dotson*, Appellant does not contest that the verdict announced at his trial accurately reflected the ultimate determination of the panel. In *Dotson*, the jury had to consider fourteen criminal counts: ten against Dotson and four against his co-defendant. 817 F.2d at 1128-29. The announced verdict found Dotson guilty of all ten counts against him, but according to the jury foreman and two other jurors, the announced verdict did not reflect the jury's vote with respect to count ten. *Id.* They stated that the jury voted unanimously to acquit Dotson of count ten rather than find him guilty. *Id.* Thus, the verdict form contained a clerical error because it did not accurately reflect their vote.

In this case, even if the affidavit is construed in the light most favorable to Appellant, *Loving*, 41 M.J. at 239, it falls short of suggesting that the announced sentence is not what was actually agreed upon by the panel. Appellant argues that there was a mistake in the panel's *process*, not that the announced verdict failed to accurately represent the panel's final determination. Appellant may be correct that the panel could have—or even should have—stopped their deliberations after their first secret vote, but they did not stop. The panel continued deliberating and, ultimately, at the conclusion of those deliberations, the court-martial voted to find Appellant guilty of Specification 2. Unlike in *Dotson*, there is no suggestion that the verdict announced in court did not reflect the panel's final vote or their ultimate intention to find Appellant guilty of Specification 2.

We agree with the military judge that the exception under M.R.E. 606(b)(2)(C) should be construed narrowly and did not apply to the error alleged by Appellant in this case. Accordingly, the military judge did not abuse his discretion when he determined that the affidavit did not fall under the M.R.E. 606(b)(2)(C) exception and was, therefore, not competent evidence. Because he could not lawfully consider Capt Sierra's affidavit, the military judge did not abuse his discretion when he denied Appellant's motion for appropriate relief.

### III. Conclusion

For the reasons cited above, we affirm the findings and sentence as affirmed by the United States Navy-Marine Corps Court of Criminal Appeals.

# APPENDIX

# UNITED STATES MARINE CORPS

| | |
|---|---|
| UNITED STATES | |
| v. | Affidavit |
| JONATAN ROSARIOMARTINEZ<br>U. S. Marine Corps | Date: 4 February 2023 |

### SWORN AFFIDAVIT

I, ████████████████ declare under penalty of perjury:

1. I was the senior member in the trial of U.S. v. Cpl Rosariomartinez.
2. During deliberations we were not provided a written copy of the procedural instructions for voting.
3. It was our understanding that in order to reach a verdict we needed either 6 votes in favor of guilty or 6 votes in favor of not guilty for both specifications.
4. We called for a vote at least 5-6 times.
5. We voted using secret written ballot.
6. The first vote where all members were decided had 3 or more members vote in favor of not guilty for both specifications. That vote was completed using secret written ballot.
7. At no time prior to this vote did we have 6 or more members vote in favor of guilty to either specification.
8. We incorrectly did not complete the findings worksheet after each finding that would have resulted in a not guilty verdict because we did not believe we had reached the required number of votes for a finding of not guilty.
9. Since the time the incorrect findings worksheet was read aloud in open court, I have learned that I should have filled out the findings worksheet consistent with the first vote of the panel which resulted in a finding of not guilty to both specifications.
10. Had we known the proper procedure we would have filled out the findings worksheet correctly to return a finding of not guilty.
11. I would like to correct the findings worksheet to accurately reflect the correct findings of the panel.
12. I can be reached via e-mail at ████████████████

1

██████████████████████████████████

█████████████████████████

U.S. Marine Corps

Sworn to and subscribed before me this 4ᵗʰ day of Feb , 23 .

████████████████████████

Name:
Rank:
Branch
10 U.S. Code § 1044a

Judge MAGGS, concurring in the judgment.

The specified issue in this case is: "Did the military judge err in finding the affidavit of the senior member to be incompetent evidence under [Military Rule of Evidence (M.R.E.)] 606(b)(2)(C) and in denying Appellant's motion for appropriate relief to correct an error in the findings worksheet?" The Court answers the specified issue in the negative and therefore affirms the findings and sentence in this case.

I agree that the findings and sentence in this case should be affirmed, but my reasoning is different. I am persuaded by the Government's argument that the Court should not reach the merits of the specified issue because Appellant abandoned the issue when he did not raise it in his appeal to the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA). I therefore respectfully concur only in the judgment of the Court and do not concur in the Court's opinion.

## I. Discussion

The Court correctly states the key facts relevant to this appeal. Appellant moved the military judge for appropriate relief on the basis of an affidavit by a member of the court-martial indicating that the members had not followed applicable voting rules when they found him guilty of one specification of sexual assault. The Government opposed the motion, arguing that M.R.E. 606(b) prevented the military judge from considering the member's affidavit. M.R.E. 606(b)(1) provides that "a member of a court-martial may not testify about any . . . incident that occurred during the deliberations of that court-martial" and that the "military judge may not receive a member's affidavit . . . on these matters."

In a written ruling, the military judge denied relief based on M.R.E. 606. In so doing, the military judge recognized that M.R.E. 606(b)(2)(C) creates an exception that allows a member to testify about whether "a mistake was made in entering the finding or sentence on the finding or sentence forms." But the military judge ruled that this exception did not apply. Rather, the military judge found "that the affidavit from the senior member produced by the

defense [was] an inquiry into the deliberative process." The affidavit was therefore incompetent evidence and "the court [was] foreclosed from considering matters that occurred during the members' deliberative process."

Appellant appealed to the NMCCA, raising two issues. Issue I was: "Did unlawful command influence occur during deliberations where the members discussed the Marine Corps and [Sexual Assault Prevention and Response] policies that any consumption of alcohol renders a person unable to consent to sexual activity and that alleged sexual assault victims have to be believed?" Issue II was: "Was Appellant entitled to a unanimous verdict?" In his brief, Appellant described the military judge's ruling on his motion for appropriate relief, but he did not argue that the military judge had erred by not considering the member's affidavit under the exception in M.R.E. 606(b)(2)(C). On the contrary, every time Appellant mentioned the voting procedures, his arguments concerned the asserted unlawful command influence or his right to a unanimous verdict. The NMCCA, accordingly, did not rule on the challenge now presented under M.R.E. 606(b)(2)(C). *United States v. RosarioMartinez*, 85 M.J. 535, 541-42 (N-M. Ct. Crim. App. 2024).

The Court also correctly states the law concerning the abandonment of issues on appeal. The United States Supreme Court has explained that "[o]rdinarily an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). But the Supreme Court has qualified this general principle by recognizing that "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below."[1] *Id.* at 557.

---

[1] Another exception is the "cross-appeal doctrine" described in *United States v. Am. Ry. Exp. Co.,* 265 U.S. 425, 435 (1924). The cross-appeal doctrine is the "familiar principle of appellate practice . . . that '[a]n *appellee* . . . may *defend* the judgment below on a ground not earlier aired.'" *United States v. Perkins*, 78

This Court has adopted the same general principle and qualification. In *United States v. Parker*, this Court explained:

> When a party does not appeal a ruling, the ruling of the lower court normally becomes the law of the case. *See United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F. 2002). The law-of-the-case doctrine, however, is a matter of appellate policy, not a binding legal doctrine. Because the law-of-the-case doctrine is discretionary, it need not be applied when the lower court's decision is "clearly erroneous and would work a manifest injustice." *Id.* at n.* (citing *United States v. Williams*, 41 M.J. 134, 135 n.2 (C.M.A. 1994)).

62 M.J. 459, 464 (C.A.A.F. 2006).[2]

After correctly describing the facts and the law, the Court then holds that this appeal is an "exceptional case" in which the Court should consider an argument that Appellant did not raise before the NMCCA. This is where I part company with the Court's opinion. In my view, this

---

M.J. 381, 386 n.8 (C.A.A.F. 2019) (second alteration in original) (emphasis added) (quoting *Greenlaw v. United States*, 554 U.S. 237, 250 n.5 (2008)). The cross-appeal doctrine does not apply to the issue now before this Court because *Appellant* is *challenging* a ruling on a ground that he did not raise at the NMCCA.

[2] Most federal courts use the term "abandonment" to describe the principle that appellants are precluded from arguing issues that they failed to raise in their appellate briefs. 16AA *Wright & Miller's Federal Practice & Procedure* § 3974.1 (5th ed. 2020). In *Parker*, however, this Court referred to this principle as the "law-of-the-case doctrine." 62 M.J. at 464. This description may be confusing because other authorities define the "law-of-the-case doctrine" as "[t]he doctrine that when a point or question arising in the course of a lawsuit has been finally decided, the legal rule or principle announced as applicable to the facts governs the lawsuit in all its later stages and developments." *Law of the Case*, *Black's Law Dictionary* (12th ed. 2024). Under this definition, the law-of-the-case doctrine would serve the more specific function of preventing a decision of a higher court from being relitigated after remand to a lower court. 18B *Wright & Miller's Federal Practice & Procedure* § 4478 (3d ed. 2019) (explaining that a ruling of a superior court "binds a lower court on remand to the law of the case established on appeal").

appeal is not an "exceptional case"—as the Supreme Court has used that term—for three reasons.

First, this case reached the NMCCA and this Court through "normal adversarial litigation." *Sims v. Apfel*, 530 U.S. 103, 109 (2000). While the Supreme Court has recognized that "the reasons for a court to require issue exhaustion are much weaker" when a "proceeding is not adversarial" in nature, *id.* at 110, this appeal concerns a fully adversarial criminal case. Appellant had every incentive and a full and fair opportunity to challenge the military order before the NMCCA but he did not do so.

Second, Appellant offers no good reason for not having raised the issue on appeal to the NMCCA. On the contrary, in his briefs before this Court, his enigmatic position is that he somehow "raised this issue on appeal under other exceptions to M.R.E. 606(b)(2)." But as described above, Appellant never argued that the military judge erred by not considering the member's affidavit under M.R.E. 606(b)(2)(C).

Third, this is not a case where settled law demonstrates "the proper resolution is beyond any doubt" or a case "where 'injustice might otherwise result.'" *Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)). On the contrary, as the Court's opinion correctly recognizes, there was no settled law regarding the specified issue because this Court had never formally considered the scope of the exception in M.R.E. 606(b)(2)(C). An appellate court cannot always be expected to refrain from correcting unraised errors "if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160 (1936). But here there was no obvious error in the military judge's ruling.

The Supreme Court's principles on abandonment are important because the justice system depends on orderly litigation. For example, as we have remarked many times, this Court benefits greatly from a thorough consideration of issues by a Court of Criminal Appeals. *E.g., United States v. Shafran*, 85 M.J. 420, 425 n.3 (C.A.A.F. 2025) (commending the Court of Criminal Appeals for its

thorough and persuasive analysis). This benefit is lost when we consider arguments that were not presented to a Court of Criminal Appeals. Better results are more likely when we decline to act on a question not raised below, "without prejudice to the disposition of the question wherever appropriately presented." *Blair v. Oesterlein Mach. Co.*, 275 U.S. 220, 225 (1927).

## II. Conclusion

For these reasons, I respectfully concur in the judgment.